*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  April 7, 2016                    520670
_____

ROBERT L. SCHULZ,

                    Appellant,

        v
                                            MEMORANDUM AND ORDER

STATE OF NEW YORK EXECUTIVE,
    ANDREW CUOMO, GOVERNOR,
    et al.,

                    Respondents.
_____

Calendar Date:  February 17, 2016

Before:  McCarthy, J.P. Egan Jr., Rose and Lynch, JJ.

                    _____

        Robert L. Schulz, Queensbury, appellant pro se.

        Eric T. Schneiderman, Attorney General, Albany (Kathleen M.
Arnold of counsel), for respondents.

                    _____

Egan Jr., J.

        Appeals (1) (transferred to this Court by order of the
Court of Appeals) from an amended judgment of the Supreme Court
(McNamara, J.), entered May 7, 2014 in Albany County, which,
among other things, partially granted defendants' motion for
summary judgment dismissing the complaint, and (2) from a
judgment of said court, entered November 13, 2014 in Albany
County, which dismissed the remaining causes of action for
failure to join necessary parties.

        On June 18, 2013, defendant Governor presented two bills —
the Upstate New York Gaming and Development Act (hereinafter the
Gaming Act) (L 2013, ch 174) and the SUNY Tax-Free Areas to
Revitalize and Transform Upstate New York Program (hereinafter

the START-UP NY Act) (L 2013, ch 68, part A, § 1) – to defendant Legislature for ratification. The Gaming Act, among other things, provided a statutory framework for regulating casino gambling within the state and effectuated three agreements entered into between the state and the Oneida Indian Nation, the Seneca Nation of Indians and the St. Regis Mohawk Tribe (hereinafter collectively referred to as the Indian Nations).[1] Those agreements generally provided that the state would grant the Indian Nations exclusive gaming rights within their respective geographic areas in exchange for a percentage of the gaming revenues and/or support for the then proposed casino gambling referendum, which was passed by the voters at the November 2013 general election. The START-UP NY Act, in turn, created an economic development program through which public and private colleges and universities in the state partner with new and expanding businesses to create net new jobs. On June 20, 2013, the Governor submitted revised versions of the Gaming Act and the START-UP NY Act – together with messages of necessity – to the Legislature for its consideration. Both the Gaming Act and the START-UP NY Act achieved Senate and Assembly approval and were ratified on June 21, 2013 (see L 2013, ch 68, part A, § 1; L 2013, ch 174, § 2, as amended by L 2013, ch 175, § 1).

In October 2013, plaintiff commenced this action seeking, among other things, a judgment declaring the Gaming Act, the START-UP NY Act and the agreements between the state and the Indian Nations to be unconstitutional, null and void and without effect. Specifically, plaintiff alleged that both Acts violated NY Constitution, article III, § 14, which sets forth what may be characterized as the aging requirements for proposed legislation, as well as the Municipal Home Rule Clause, which limits the circumstances under which the Legislature may act "in relation to the property, affairs or government of any local government" (NY Const, art IX, § 2 [b] [2]). Plaintiff further contended that the START-UP NY Act and the agreements with the Indian Nations violated those constitutional provisions prohibiting the passage

---

[1]  Oneida County and Madison County also were parties to the agreement entered into between the state and the Oneida Indian Nation.

of any bill that constitutes a tax exemption, gift or loan of public funds (see NY Const, art III, § 17; art VII, § 8 [1]; art VIII, § 1). Finally, plaintiff asserted that the agreements with the Indian Nations violated the separation of powers doctrine. Defendants answered and moved for summary judgment dismissing plaintiff's amended complaint.

By amended judgment entered in May 2014, Supreme Court partially granted defendants' motion, rejecting plaintiff's challenge to the constitutionality of the Gaming Act and the START-UP NY Act. As for plaintiff's claims relative to the agreements entered into between the state and the Indian Nations, Supreme Court found that plaintiff failed to join the Indian Nations, Oneida County and Madison County as necessary parties and directed plaintiff to do so within 30 days of the date of the amended judgment. When plaintiff failed to do so, Supreme Court, by judgment entered in November 2014, dismissed plaintiff's remaining causes of action for failure to join necessary parties. These appeals by plaintiff ensued.

We affirm. The NY Constitution "requires that a bill be printed and placed upon the desks of legislators 'at least three calendar legislative days prior to its final passage, unless the [G]overnor . . . shall have certified, under his or her hand and seal of the state, the facts which in his or her opinion necessitate an immediate vote thereon'" (Schulz v State of N.Y. Exec., 134 AD3d 52, 54 [2015], appeal dismissed 26 NY3d 1139 [2016], quoting NY Const, art III, § 14). Although the quoted language indeed "requires that the Governor set forth some facts in a message of necessity" (Schulz v State of N.Y. Exec., 134 AD3d at 54), "[t]he Constitution on its face makes the Governor's judgment of the facts determinative; he or she is to state facts that in his or her opinion necessitate prompt action. Whether a court's opinion is or is not the same as the Governor's does not matter" (Maybee v State of New York, 4 NY3d 415, 419 [2005] [internal quotation marks omitted]). Simply put, "so long as some facts are stated, a court may not intervene" (Schulz v State of N.Y. Exec., 108 AD3d 856, 857 [2013], lv dismissed 21 NY3d 1051 [2013]). The rationale underlying this judicial deference is readily apparent, as "the very need for haste that prompts [the Governor] to issue a certificate [of necessity in the first

instance] may make it difficult to prepare a detailed and persuasive statement of the reasons for it" (<u>Maybee v State of New York</u>, 4 NY3d at 420). Nonetheless, while "the sufficiency of the facts stated by the Governor in a certificate of necessity is not subject to judicial review" (<u>id.</u> at 418), "the Legislature has its own remedy for an inadequate certificate, since if it does not think the Governor's reasons are good ones, it is not required to act in fewer than three days — or even to consider the bill at all" (<u>id.</u> at 420). Here, upon reviewing the respective messages of necessity, we are satisfied that the constitutional standard was met (see <u>Schulz v State of N.Y. Exec.</u>, 134 AD3d at 54).[2] Accordingly, plaintiff's challenge based upon NY Constitution, article III, § 14 must fail.

As a related argument, plaintiff contends that the passage of the Gaming Act and the START-UP NY Act by messages of necessity denied him his right to petition for redress of grievances under NY Constitution, article I, § 9 and the 1st, 5th and 14th Amendments of the US Constitution. Although plaintiff indeed cited these constitutional provisions as jurisdictional bases for his complaint, he raised no substantive arguments with respect thereto before Supreme Court. Accordingly, we deem these issues to be unpreserved for our review (see <u>Anthony DeMarco & Sons Nursery, LLC v Maxim Constr. Serv. Corp.</u>, 130 AD3d 1409, 1411 [2015]; <u>Tverskoy v Ramaswami</u>, 83 AD3d 1195, 1198 [2010]). In any event, the mere existence of the underlying action, as well as the instant appeal, belie plaintiff's claim that he somehow has been foreclosed from seeking redress of his grievances.

---

[2] The messages of necessity each indicated that the Gaming Act and the START-UP NY Act contained certain "technical errors" that required correction in order to better "effectuate the Legislature's and the Executive's intentions." The messages of necessity further reflected that, in light of the then-imminent scheduled adjournment of the Legislature, such messages were required in order to ensure prompt consideration of the Acts in question.

    With respect to plaintiff's remaining challenges to the
constitutionality of the START-UP NY Act, we note that
"[l]egislative enactments enjoy a strong presumption of
constitutionality, and it is presumed that the Legislature has
investigated and found facts necessary to support the legislation
together with the existence of a situation showing or indicating
its need or desirability.  Accordingly, parties challenging a
duly enacted statute face the initial burden of demonstrating the
statute's invalidity beyond a reasonable doubt" (Catholic
Charities of Diocese of Albany v Serio, 28 AD3d 115, 120 [2006]
[internal quotation marks and citations omitted], affd 7 NY3d 510
[2006], cert denied 552 US 816 [2007]; see Overstock.com Inc. New
York State Dept. of Taxation & Fin., 20 NY3d 586, 593 [2013],
cert denied ___ US ___, 134 S Ct 682 [2013]; Matter of Concerned
Home Care Providers, Inc. v State of New York, 108 AD3d 151, 154
[2013], lv dismissed 22 NY3d 946 [2013]).  Where, as here, "the
statute concerns [a] public financing program[], courts are
required to exercise restraint and give deference to the
legislative enactment, unless the program is patently illegal"
(Local Govt. Assistance Corp. v Sales Tax Asset Receivable Corp.,
2 NY3d 524, 535 [2004] [internal quotation marks and citations
omitted]).

    Plaintiff initially argues that the START-UP NY Act
violates the Municipal Home Rule Clause of the NY Constitution,
which permits the Legislature "to act in relation to the
property, affairs or government of any local government only by
general law, or by special law only . . . on certificate of
necessity from the [G]overnor reciting facts which in the
judgment of the [G]overnor constitute an emergency requiring
enactment of such law and, in such . . . case, with the
concurrence of two-thirds of the members elected to each house of
the [L]egislature" (NY Const, art IX, § 2 [b] [2]).  In
ascertaining whether a particular legislative enactment runs
afoul of this clause, "[t]he test is . . . that if the subject be
in a substantial degree a matter of [s]tate concern, the
Legislature may act, though intermingled with it are concerns of
[a] locality" (Empire State Ch. of Associated Bldrs. & Contrs.,
Inc. v Smith, 21 NY3d 309, 316 [2013] [internal quotation marks
and citation omitted]; see Matter of Town of Islip v Cuomo, 64
NY2d 50, 57 [1984]).  As a result, "legislation on matters of

[s]tate concern even though of localized application and having a direct effect on the most basic of local interests does not violate the constitutional home rule provisions" (Matter of Town of Islip v Cuomo, 64 NY2d at 56-57 [internal quotation marks and citation omitted]).[3]

In light of the stated purpose of the START-UP NY Act — to create an economic development program through which public and private colleges and universities in the state may partner with new and expanding businesses to create net new jobs — there can be no question that the Act itself "addresses a matter of substantial state concern" (Greater N.Y. Taxi Assn. v State of New York, 21 NY3d 289, 302 [2013]). We are similarly persuaded, upon reviewing the terms and provisions of the Act, that it "bear[s] a reasonable relationship to [that] substantial state interest" (id. at 305). Accordingly, we discern no violation of NY Constitution, article IX, § 2. Plaintiff's remaining constitutional claims — that the START-UP NY Act constitutes an improper tax exemption (NY Const, art III, § 17) or amounts to the gift or loan of public moneys in aid of a particular individual, private entity or private undertaking (NY Const, art VII, § 8 [1]; art VIII, § 1) — are equally unavailing.

Finally, we cannot say that Supreme Court abused its discretion in dismissing plaintiff's remaining causes of action for failure to join necessary parties — despite being given the opportunity to do so. As signatories to the very agreements challenged by plaintiff in this action, the Indian Nations, as well as Oneida County and Madison County, plainly qualify as parties "who might be inequitably affected by a judgment in [this] action" (CPLR 1001 [a]; accord Matter of County of Sullivan [Aleksander Corp.], 101 AD3d 1539, 1539 [2012]). As such, Supreme Court properly concluded that these entities should be joined as necessary parties and directed plaintiff to do so within 30 days of the date of the amended judgment (April 28,

---

[3] Supreme Court did not address whether the START-UP NY Act constituted a general or special law and, for the reasons that follow, the Act's characterization is not determinative of these appeals.

2014).  Plaintiff, by his own admission, did not serve the Indian Nations or the affected counties within the specified time frame. Although plaintiff now argues that dismissal is too severe a sanction for his noncompliance, we discern no abuse of Supreme Court's considerable discretion in this regard.  Plaintiff's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

    McCarthy, J.P., Rose and Lynch, JJ., concur.


    ORDERED that the amended judgment and judgment are affirmed, without costs.


                    ENTER:

                    Robert D. Mayberger
                    Clerk of the Court